UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: MAR 2 5 2015

Rodney Davis,

                Petitioner,

–v–

William Lee,

                Respondent.

13-CV-3827 (AJN)

MEMORANDUM AND ORDER

ALISON J. NATHAN, District Judge:

    On June 4, 2013, Petitioner Rodney Davis timely filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 2008 conviction for burglary in the second degree in New York State Supreme Court. For the reasons set forth below, Davis's petition is DENIED.

## I.   BACKGROUND

    The following facts are taken from evidence presented at Davis's trial. In October 2006, Abuelgasim Ahmed, a building contractor and carpenter, was renovating his four-story brownstone townhouse located at 14 West 122nd Street in Manhattan, New York. He stayed at an office elsewhere while the building was undergoing renovations. Ahmed left the brownstone on Friday, October 13, 2006, and locked the doors behind him. When he and his nephew, Haydar Mohamed, returned to the brownstone on Monday, October 16, 2006, at about 10:00 a.m., they discovered that the lock on the street-level gate had been broken. They soon discovered that the lock to the front door was also broken and the door was open. After entering the house, the two discovered extensive damage: Copper and brass piping had been removed from the walls and under the kitchen sink, and water pipes and water meters were also taken from the basement. Ahmed's television and videocassette recorder were also missing.

In their survey of the house, Ahmed and Mohamed also discovered a bloody handprint inside the entranceway by the front door, as well as a liquor bottle, razor, photo identification card, and several cigarette butts around the liquor bottle in the first-floor bedroom. Ahmed was asthmatic and did not smoke. After Ahmed and Mohamed had been in the house for about 25 minutes, an individual entered the townhouse through the front door. At trial, Mohamed identified Davis as the man who had entered the townhouse, but Ahmed was unable to make an in-court identification. After entering the townhouse, Ahmed and Mohamed asked Davis what he was doing there. Davis responded that he had come to "take"[1] some items from the residence. Ahmed informed Davis that this was his home and that Davis would need to explain to the police what he was doing in the house. Ahmed then called the police from his cell phone while Mohamed watched Davis.

While waiting, Davis walked through the living room and first-floor bedroom, which is where Ahmed and Mohamed had originally found the cigarette butts. Mohamed could not recall whether Davis touched anything inside the rooms. Ahmed testified that Davis then went outside to smoke a cigarette, and further testified that Davis did not smoke a cigarette inside the house. Mohamed could not recall whether Davis had smoked a cigarette inside the house or not, but he believed it was unlikely due to Ahmed's asthma. Once outside for a brief amount of time, Davis indicated that he had to go check on a truck that he said was waiting for him and proceeded to walk away. After Davis looked back and saw Mohamed following him, he began to run with Mohamed in pursuit. Mohamed lost Davis when he entered an abandoned building.

When police officers arrived at the townhouse later that day, they collected DNA evidence from the bottle, cigarette butts, bloody handprint, and an elimination (i.e., feces or

---

[1] In an earlier filing, Davis argued that Ahmed and Mohamed's trial testimony was contradicted (1) by a pre-trial brief filed by the prosecutor in which the prosecutor paraphrased Ahmed's original statement to the police as stating that Davis was there to "move" some items, Dkt. No. 20, and (2) Ahmed's grand jury testimony in which he testified that Davis said "he come (sic) to pick up luggage and furniture from there," Dkt. No. 22. For the purposes of this petition, it is not relevant whether Davis told Ahmed that he was there to "take," "move," or "pick up" some items.

2

urine) sample. The photo identification card that Ahmed and Mohamed claimed to have seen earlier was not recovered.

Asako Ishii, a "criminalist" with the Office of the Chief Medical Examiner ("OCME"), testified at trial that certain items from the crime scene were sent to a third-party forensic laboratory, Bode Technology, for DNA analysis. The lab report that Bode Technology prepared was admitted into evidence at trial. Davis's DNA had been collected from a buccal swab of his cheek following a prior conviction, which meant that his DNA was already on file in the Combined DNA Index System (CODIS). Davis's DNA sample in CODIS led to his identification and subsequent arrest as the unnamed suspect who entered Ahmed's brownstone. In March 2008, several months after his indictment, the State applied for and received permission to obtain an additional DNA sample from Davis. The apparent purpose of the second sample was to "eliminate the need for testimony from the individual who initially took a sample of [Davis's] DNA for the state DNA databank after [Davis's] prior felony conviction." Resp. Br. at 30 n.8 (citing A44 ¶ 4).[2] The OCME then compared this new sample to the DNA profile earlier provided by Bode Technology.

On direct examination, Ishii testified broadly that the DNA collected from Davis matched the "DNA profile regarding . . . case BTB 0701-223," Tr. 62:1-8,[3] which had earlier been identified as the Bode Technology case file number associated with the evidence collected at the crime scene, Tr. 44:22-24. But the prosecutor did not explicitly elicit on direct examination which of the items of evidence that Bode Technology analyzed matched Davis's DNA. On cross-examination, however, Davis's defense counsel elicited testimony from Ishii that there were four items submitted to Bode Technology for testing: a cigarette butt, a mini liquor bottle, a swab of possible blood, and an elimination swab. Tr. 63:10-64:12. He further asked Ishii "on what item" was there a match for Davis. Tr. 64:13-14. Ishii responded that there was a match on

---

[2] Citations containing A__ are references to the record on appeal, which was included as Ex. A. to the Declaration of Paul B. Lyons (Dkt. No. 18).
[3] Trial transcript citations are noted as Tr. and refer to Dkt. No. 18-2.

3

the cigarette butt *and* the blood swab taken from the handprint. This revelation came as some surprise to defense counsel and the prosecutor who both erroneously believed that only the cigarette butt matched Davis's DNA.

The jury convicted Davis of second-degree burglary on December 22, 2008 and judgment was rendered on March 6, 2009. Pet. at 2. Davis unsuccessfully appealed his conviction to the Appellate Division, First Department, *People v. Davis*, 933 N.Y.S.2d 663 (App. Div. 2011), and to the New York Court of Appeals, which denied his application for leave to appeal, *People v. Davis*, 968 N.E.2d 1004 (N.Y. 2012). Davis's conviction became final on October 22, 2012, which was ninety days following the Court of Appeals' denial of reconsideration. The one-year statute of limitations for Davis's habeas corpus claim under the Antiterrorism and Effective Death Penalty Act ("AEDPA") expired on October 22, 2013. 28 U.S.C. § 2244(d)(1)(A).

By letter dated September 24, 2013, Davis asked the Court to hold his habeas proceedings in abeyance pending resolution of a motion he filed in New York State court that raised an additional claim not raised on direct appeal or in his habeas petition. Dkt. No. 10. Respondent opposed that request. Dkt. No. 12. The Court denied Davis's request without prejudice because it concluded that the request was inadequate, but it afforded Davis an additional 30 days to move to amend his petition. Dkt. No. 13. Davis then filed a renewed request, which was denied because the Court concluded that his additional claim was untimely and, therefore, any amendment would have been futile. Dkt. No. 24. The Court also ordered Davis to file his reply in support of the original petition within 30 days of its January 30, 2014 Order. Dkt. No. 24 at 6. Following a request for a deadline extension from Davis, the Court extended the time to file his reply to April 12, 2014. Dkt. No. 26. Although the reply was not received until April 18, 2014, Dkt. No. 27, the Court deems it timely filed.

## II.   LEGAL STANDARD

Under 28 U.S.C. § 2254, a writ of habeas corpus shall not be granted

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established

4

> Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

§ 2254(d). A state-court decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000). A state-court decision involves an "unreasonable application" of clearly established federal law "only if it is so erroneous that 'there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [the Supreme] Court's precedents.'" *Nevada v. Jackson*, 133 S. Ct. 1990, 1992 (2013) (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011)). Furthermore, "federal habeas courts [must] presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007) (quoting § 2254(e)(1)).

### III. DISCUSSION

Davis raises four claims as the basis for his habeas petition, all of which were also raised on the direct appeal of his conviction: (1) Confrontation Clause violations; (2) ineffective assistance of counsel; (3) prosecutorial misconduct; and (4) speedy trial violations. The Court addresses each claim individually.

#### A. Confrontation Clause Violations

Davis contends that his rights under the Confrontation Clause of the Sixth Amendment were violated by the admission into evidence of the Bode Technology report without affording him the opportunity to confront a witness from that company. Davis raised this claim on direct appeal to the Appellate Division, which held that the claim was procedurally barred because it was not preserved at trial and, alternatively, that the claim was meritless because the New York "Court of Appeals found a similar DNA report to be nontestimonial for Confrontation Clause purposes, and we find no basis to distinguish the report in this case." *Davis*, 933 N.Y.S.2d at 665 (citing *People v. Brown*, 918 N.E.2d 927, 928 (N.Y. 2009)).

5

"Even where the state court has ruled on the merits of a federal claim 'in the alternative,' federal habeas review is foreclosed where the state court has also expressly relied on the petitioner's procedural default." *Murden v. Artuz*, 497 F.3d 178, 191 (citing *Green v. Travis*, 414 F.3d 288, 294 (2d Cir. 2005)). But "to bar federal habeas review [ ] the state court's decision must rest not only on an independent procedural bar under state law, but also one that is 'adequate to support the judgment.'" *Id.* at 191-92 (quoting *Jimenez v. Walker*, 458 F.3d 130, 138 (2d Cir. 2006)). To be considered adequate, a state procedural bar must be one that is "'firmly established and regularly followed by the state in question' in the specific circumstances presented in the instant case." *Id.* at 192 (quoting *Monroe v. Kuhlman*, 433 F.3d 236, 241 (2d Cir. 2006)). The factors guiding a habeas court's analysis of adequacy in the context of a procedural default that arose at trial are:

> (1) whether the alleged procedural violation was actually relied on in the trial court, and whether perfect compliance with the state rule would have changed the trial court's decision; (2) whether state caselaw indicated that compliance with the rule was demanded in the specific circumstances presented; and (3) whether petitioner had "substantially complied" with the rule given "the realities of trial," and, therefore, whether demanding perfect compliance with the rule would serve a legitimate governmental interest.

*Id.* (quoting *Cotto v. Herbert*, 331 F.3d 217, 240 (2d Cir. 2003)).

At trial, defense counsel objected to the Bode Technology report as well as the related OCME case file, which Ishii testified about on direct and cross-examination. Defense counsel objected to both documents at a sidebar on the grounds that the documents lacked a proper foundation, thereby suggesting that the objection rested on hearsay, and unfairly bolstered Ishii's testimony. The trial court overruled the objections, reasoning that the report and case file were the basis for the expert witness's opinion and were therefore material and relevant. The trial court further stated that "[i]f the objection is based upon foundation as a business record it seems to me that foundation had been laid." Tr. 55:2-4. Defense counsel did not further object or otherwise clarify that the objection was based on the Confrontation Clause rather than hearsay.

6

On direct appeal, new appellate counsel argued that the Confrontation Clause objection was properly preserved, not that trial counsel was ineffective for failing to properly raise (and thus preserve) it. The Appellate Division disagreed, and, relying on *People v. Liner*, 872 N.E.2d 868, 868 (N.Y. 2007), held that the claim was not preserved at trial because "Defendant's objections unmistakably invoked the hearsay rule rather than the right of confrontation, as the trial court's ruling made clear." *Davis*, 933 N.Y.S.2d at 665. *Liner* held that "[b]ecause defendant failed to assert at the time of the trial that the admission of [two trespass] notices violated his right of confrontation, the issue is not preserved for our review." 872 N.E.2d at 868 (citing *People v. Gray*, 652 N.E.2d 919, 921 (N.Y. 1995) (holding that to preserve a claim of error in the admission of evidence a defendant must make his or her objection known to the court and argument must be "specifically directed" at the alleged error)).

The Second Circuit has recognized that the contemporaneous objection rule is a firmly established and regularly followed state practice in New York. *See Richardson v. Greene*, 497 F.3d 212, 218 (2d Cir. 2007) ("New York's highest courts uniformly instruct that to preserve a particular issue for appeal, defendant must *specifically focus on the alleged error*." (quoting *Garvey v. Duncan*, 485 F.3d 709, 714-15 (2d Cir. 2007) (internal quotation marks omitted))). And courts in this Circuit have consistently held that "the contemporaneous objection rule [is] an independent and adequate state procedural bar for Confrontation Clause objections." *Bryant v. Lempke*, No. 08 Civ. 6103, 2010 U.S. Dist. LEXIS 77533, at *14 (W.D.N.Y. Aug. 2, 2010) (citing *Stewart v. Greene*, No. 05-Civ.-0566, 2009 U.S. Dist. LEXIS 108685, at *5-6 (S.D.N.Y. Nov. 19, 2009); *Blackman v. Ercole*, No. 06-CV-855, 2009 U.S. Dist. LEXIS 117612, at *11 (E.D.N.Y. Dec. 17, 2009)). "Moreover, it is well-settled law in New York that the invocation of a hearsay objection is insufficient to preserve a Confrontation Clause violation." *Id.* at *15 (citing *Canemo v. Dennison*, No. 06 Civ. 2078, 2010 U.S. Dist. LEXIS 40013, at *10-11 (S.D.N.Y. Apr. 23, 2010)); *see also People v. Kello*, 746 N.E.2d 166, 168 (N.Y. 2001) (holding that hearsay objection alone was insufficient to preserve Confrontation Clause objection).

Therefore, because the Appellate Division's decision rested on an independent procedural bar that is adequate to support the judgment, habeas review of this claim is foreclosed.

However, if a petitioner "has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.[4]" *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *overruled on other grounds by Martinez v. Ryan*, 132 S. Ct. 1309, 1315 (2012).

To excuse his procedural default of the Confrontation Clause claim, Davis points to ineffective assistance of *appellate* counsel as cause. But "[t]he Supreme Court has held that ineffective assistance of appellate counsel claims cannot constitute 'cause' for procedural default unless first presented in state court as an independent constitutional claim." *DiSimone v. Phillips*, 461 F.3d 181, 191 (2d Cir. 2006) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000); *Sweet v. Bennett*, 353 F.3d 135, 141 n.7 (2d Cir. 2003) ("Thus, [petitioner] could not use ineffective assistance of appellate counsel as 'cause' for his procedural default in this case, because [petitioner] has not brought a claim in state court based on the notion that his counsel in the state proceedings was ineffective.")). The appropriate mechanism for raising a claim of ineffective assistance of appellate counsel under New York law is a writ of coram nobis, which Davis has not sought. *Id.* (citing *Sweet*, 353 F.3d at 141 n.7; *People v. Bachert*, 509 N.E.2d 318, 321-22 (N.Y. 1987)).[5] Therefore, Davis's Confrontation Clause claim is procedurally defaulted and he has not demonstrated cause sufficient to permit habeas review.

---

[4] Davis did not make an argument regarding a fundamental miscarriage of justice with respect to this or any other claim.

[5] Even if ineffective assistance of counsel could provide cause to excuse this procedural default, the Court sees no basis for a finding of prejudice. In essence, Davis contends that both appellate and trial counsel were ineffective for failing to object to the introduction of the DNA report as a violation of the Confrontation Clause. But at the time of trial and appeal, prevailing New York Court of Appeals authority held that such reports did not violate the Confrontation Clause. *See People v. Brown*, 918 N.E.2d 927 (N.Y. 2009). Davis contends that the Supreme Court's holding in *Bullcoming v. New Mexico*, 131 S. Ct. 2705 (2011), which was decided after trial but before the Appellate Division issued its opinion, clearly established that such reports violate the Confrontation Clause. To the contrary, and as a plurality of the Supreme Court made clear in a subsequent case, it did not. *Williams v. Illinois*, 132 S. Ct.

8

B.  **Ineffective Assistance of Counsel**

Davis contends that trial counsel was ineffective because he failed to meaningfully investigate the DNA evidence provided by the State, which led him to "open the door" for the introduction of prejudicial DNA evidence on cross-examination that the prosecution had neglected to introduce on direct examination. He further argues that trial counsel's failure to meaningfully investigate the DNA evidence led him to reject a plea agreement that he would have otherwise agreed to rather than face trial.

The long-established standard for assessing ineffective assistance of counsel is set forth in *Strickland v. Washington*, which requires a two-part showing:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. 668, 687 (1984). As noted, a habeas court does not apply this standard in the first instance to the facts raised in a given petition; it determines whether the state court's adjudication of the ineffective assistance of counsel claim was "unreasonable." § 2254(d); *see also Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable – a substantially higher threshold.'" (quoting *Schriro*, 550 U.S. at 473)). The Supreme Court has framed this inquiry as "whether there is any

---

2221, 2227-44 (2012); *see also id.* at 2248 (Breyer, J., concurring) ("The several different opinions filed today embody several serious, but different, approaches to the difficult general question. Yet none fully deals with the difficult general question as to how, after *Crawford*, Confrontation Clause 'testimonial statement' requirements apply to crime laboratory reports. Nor can I find a general answer in *Melendez-Diaz* or *Bullcoming*."). Thus, it was not objectively unreasonable for *appellate* counsel to fail to argue that *trial* counsel failed to make an argument that was contrary to prevailing state-law, and there is no reason to conclude that the result of the proceedings would have been different if he had.

9

reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### 1. Trial Counsel's Performance

"The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 132 S. Ct. 1376, 1384 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). The Appellate Division observed that "[i]t appears that prior to trial both the prosecutor and defense counsel misunderstood a laboratory report to mean that a match was found as to the cigarette butt but not on the bloodstain. Defendant contends that his trial counsel rendered ineffective assistance when he inadvertently elicited testimony that defendant's DNA matched the bloodstain." *Davis*, 933 N.Y.S.2d at 664. The Appellate Division then concluded, without further discussion, that "defendant received effective assistance under the state and federal standards." *Id.* (citing *People v. Benevento*, 697 N.E.2d 584 (N.Y. 1998); *Strickland*, 466 U.S.). In *Strickland*, the Supreme Court noted that

> strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

466 U.S. at 690-91. In light of *Strickland*'s analysis of the duty to investigate, for the reasons that follow, the Appellate Division's adjudication of the first prong of the *Strickland* standard was not unreasonable.

Perhaps the greatest consideration in this regard is the fact that the laboratory report provided to defense counsel is highly technical and difficult to interpret, and the page summarizing the report's conclusions, on which both defense counsel and the prosecutor relied, is unclear. The summary page is a standardized form with a number of options for the OCME

10

criminalist to circle. The circling on the form notes that DNA was obtained from three separate items: (1) a "cigarette"; (2) a "beverage container"; and (3) "other," with a handwritten notation stating "1st floor," indicating the swab taken from the bloodstain found in the first floor hallway. Lyons Decl. Ex. B at 22. For the cigarette, "yes" is circled on the line labeled "CODIS profile." A "yes" on this line indicates a match with a profile in the CODIS database. For the beverage container, "no" is circled on the "CODIS profile" line. Two lines below that, the form prompts the OCME analyst to provide a reason for a "no" response (the options on the line are "dummy," "no DNA," "equals (V)," "mix," "too few loci," "same as other," and "other"). The OCME criminalist circled the phrase "no DNA" in response. For the bloodstain, "no" is circled on the "CODIS profile" line. Two lines below that, the line prompting a reason for the "no" response has the phrase "same as other" encircled. These notations apparently led both defense counsel and the prosecutor to assume incorrectly that only the cigarette butt returned a match to Davis, who had a CODIS profile. (By this point, both attorneys knew that Davis had a CODIS profile, which, as noted above, is how law enforcement identified him as the unnamed suspect whom Ahmed and Mohamed encountered on October 16, 2006.)

Had the report simply circled "yes" to indicate a CODIS profile match for the bloodstain as well as "same as other," it probably would have suggested to defense counsel that the bloodstain (a) also returned a match to someone in the CODIS database and (b) that person was the "same as [the] other" match indicated in the report, i.e., Davis. But circling "no" on the CODIS profile-match line suggested that the bloodstain DNA did not match anyone in the CODIS database, thereby excluding a match to Davis. Ideally, if defense counsel held that assumption, he should have followed up to find out what "same as other" referred to in light of its ambiguity. But because the report itself suggested that *only* the first swab returned a hit to someone in the CODIS database, it was not objectively unreasonable for defense counsel to assume that the other two items did not match Davis's DNA and thus fail to investigate the issue further. This conclusion is reinforced by the prosecutor's reading of the report in the same way.

11

While a prosecutor's own poor performance should not excuse equally poor performance on the part of defense counsel, that both attorneys misread this crucial report in the same way informs this Court's review of the reasonableness of the Appellate Division's determination. As *Strickland* instructs, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments," and this Court cannot conclude, under AEDPA's highly deferential standard, that the Appellate Division's application of this standard to the facts here was unreasonable. Moreover, reviewing the transcript at trial and other evidence that the parties submitted, the Court notes that, aside from defense counsel's failure to inquire as to the meaning of "same as other" on the summary report page, his performance "in the aggregate" was effective.[6] *See Lindstadt v. Keane*, 239 F.3d 191, 199-200 (2d Cir. 2001); *see also Harrington*, 562 U.S. at 111 ("And while in some instances even an isolated error can support an ineffective-assistance claim if it is sufficiently egregious and prejudicial, it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." (citations and internal quotation marks omitted)). Therefore, Davis fails to satisfy the first prong of *Strickland* because there is a "reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Harrington*, 562 U.S. at 105.

### 2. Prejudice

Even assuming trial counsel's performance fell below the constitutionally acceptable standard, Davis still fails to show that this deficiency prejudiced him. "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 132 S. Ct. at 1384 (quoting *Strickland*, 466 U.S. at 694). Applying this standard, the Appellate Division

---

[6] For example, trial counsel successfully convinced the trial court to charge the jury with the lesser included offense of trespass; in summation, he suggested that Davis, who was homeless at the time, had entered the brownstone but only to look for a place to squat; he also argued that Davis fled the scene because he did not want to be arrested for trespassing; he posited that the cigarette butt may have been left behind when Davis entered the house; and, finally, he attempted to point out that there could have been a number of innocent explanations for the bloodstain match that would be consistent with this squatting theory.

12

concluded that even apart from any showing that defense counsel's services "fell outside the wide range of professionally competent assistance," *Strickland*, 466 U.S. 690, "Defendant has not shown a reasonable probability that any mistake in eliciting incriminating evidence concerning the bloodstain affected the outcome of the trial or rendered the trial unfair," *Davis*, 933 N.Y.S.2d at 665 (citing *People v. Davis*, 78 A.D.3d 435, 436 (2010)). The Appellate Division further stated:

> The evidence of defendant's guilt was already overwhelming without the second DNA match. This evidence included the DNA match relating to the cigarette butt, as well as defendant's highly incriminating statements and behavior when he returned to the scene and encountered the victim. Contrary to defendant's arguments, the evidence excludes any reasonable possibility that defendant left the cigarette in the apartment at the time he returned to the premises instead of at the time of the burglary.

*Id.* In light of the facts elicited at trial, this conclusion was not an unreasonable application of prevailing Supreme Court precedent.

### C. The Plea Offer

Davis's habeas petition framed his ineffective assistance of counsel claim solely in the terms stated above: trial counsel's failure to investigate the lab report led him to inadvertently elicit incriminating testimony on cross-examination. But in his reply brief, Davis also argues that counsel's failure to understand the lab report led him to decline a plea agreement that he would have accepted had he known that the evidence against him also consisted of a DNA match to the bloodstain. Like his petition, Davis framed his ineffective assistance of counsel claim on direct appeal solely in terms of his counsel's performance at trial. *See* Lyons Decl. Ex. C. at 2. Only toward the tail end of the section of his brief discussing ineffective assistance of counsel did he argue, without citing any authority, that trial counsel's error

> made it "a very, very difference case," 02/04/09 7, perhaps one appropriate for a plea. 02/04/09 7-8 ("This might have been a plea had I known that"). Mr. Davis was never given the opportunity to fairly consider any offer of plea because his attorney did not understand all the evidence against him.

Lyons Decl. Ex. H. at 36. The Appellate Division did not expressly address the specific application of counsel's alleged failure to meaningfully investigate the DNA evidence in the

13

context of Davis's rejected plea agreement. It is unclear whether this omission was because the two isolated sentences in Davis's appellate brief failed to "fairly present[] both the factual and legal premises for his federal claim to [the Appellate Division]," *Acosta v. Artuz*, 575 F.3d 177, 185 (2d Cir. 2009), in which case the claim would not be preserved for habeas review, *DiSimone*, 461 F.3d at 190, or because the Appellate Division assumed that its conclusion as to trial counsel's effectiveness applied with equal force to both variations of the ineffective assistance of counsel claim. It is worth noting that *Lafler*, the Supreme Court holding setting forth the ineffective assistance standard in the context of rejected plea agreements, was not handed down until after the Appellate Division issued its ruling, so the proper prejudice standard to be applied in such situations was not then-prevailing Supreme Court precedent. But because it has no effect on the outcome, the Court here assumes without deciding that the claim for ineffective assistance during plea negotiations was fairly presented to the Appellate Division based on the two sentences in Davis's appellate brief. In any event, while the alleged prejudice at trial and during plea negotiations differs, the basis for the alleged attorney error is the same: trial counsel's failure to meaningfully investigate the DNA evidence. As extensively discussed above, the Appellate Division reviewed this error and concluded that Davis "received effective assistance under the state and federal standards," a conclusion that this Court finds to be a reasonable application of *Strickland*.

### D. Prosecutorial Misconduct

Petitioner's next claim for habeas relief overlaps with his ineffective assistance claim in that he contends that the prosecutor caused "undue surprise" based on "[t]he prosecutor's misleading and incomplete disclosure of and representations about the DNA evidence, which focused only on DNA found on a cigarette butt, and did not adequately inform petitioner of a DNA match to a bloodstain." Petition at 8. The Appellate Division held that the claim was not preserved on appeal because it was raised for the first time in a post-verdict motion. *Davis*, 933 N.Y.S.2d at 664 (citing *People v. Padro*, 75 N.Y.2d 820, 821 (1990)). In the alternative, the Appellate Division also held that there was no basis for reversal on the merits.

14

Davis did not present any arguments in this Court regarding cause for this procedural default. Instead, he stated in his reply brief that he did "not wish to add to the argument raised on direct appeal" and directed the Court to "rely on the argument advanced by Appellate Counsel." Reply at i. On direct appeal, and as part of his ineffective assistance claim, Davis argued that his trial counsel erred by failing to make a contemporaneous objection of prosecutorial misconduct (due to Ishii's statement on cross-examination and the prosecutor's questions on re-direct examination), which is why the Appellate Division held that the prosecutorial misconduct claim was not preserved on appeal. As noted above, ineffective assistance of counsel can provide the cause necessary to excuse a procedural default, but only if it is also presented to the state courts as an independent constitutional claim. *See DiSimone*, 461 F.3d at 191. From Davis's appellate brief, it appears that he did fairly present this particular ineffective assistance of counsel claim to the Appellate Division, but the Appellate Division did not address it in its opinion.

Regardless, the Appellate Division did conclude that Davis suffered no prejudice from the alleged prosecutorial misconduct:

> The People fulfilled their discovery obligations by turning the DNA report over to the defense . . . . At various stages of the litigation, including the trial itself, the prosecutor did create a misleading impression that defendant's DNA was found only on the cigarette and not the bloodstain; the prosecutor evidently was under that misimpression himself. Nevertheless, this did not require the drastic remedy of a new trial, the only remedy available given that defendant did not raise the issue until after the verdict. The People did not act in bad faith . . . . Even if the prosecutor's error contributed to defense counsel's error in eliciting the bloodstain DNA evidence, that evidence did not affect the outcome of the trial, as noted above.

*Davis*, 933 N.Y.S.2d at 665. Moreover, and putting aside any effect on the outcome of trial, Davis's argument that he was prejudiced by the prosecutor's alleged misconduct is illogical. Davis posits that the prosecution "surprised" defense counsel at trial with the revelation that the lab report contained a match for both the cigarette butt and the bloodstain. But it is hard to imagine how the prosecutor could have "surprised" defense counsel with this revelation when he was equally ignorant of what Ishii was going to say on the stand. Furthermore, Davis elsewhere

15

contends that it was his own counsel's misreading of the lab report that led to the testimony regarding the bloodstain. In other words, Davis suggests that had his defense counsel kept his mouth shut, the bloodstain match would not have come to light at trial. Therefore, he cannot claim undue surprise when the prosecution appears to have been equally surprised by the revelation at trial and it was his own defense counsel who caused the surprise. Even assuming trial counsel's failure to properly object to the alleged prosecutorial misconduct could provide the cause necessary to excuse this procedural default, Davis cannot point to actual prejudice based on the prosecutor's alleged incomplete disclosure. Nor can Davis claim prejudice with respect to his rejection of a plea agreement. Had the prosecutor known of the match to the bloodstain (which would have been necessary for him to have surprised defense counsel with this revelation at trial), it would have strengthened the State's case at trial, making it unlikely that Davis would have received the same plea agreement that he rejected.

### E. Speedy Trial Violations

Davis initially stated in his petition that his right to a speedy trial under New York's Criminal Procedure Law § 30.30 was violated. Respondent countered that this claim was not properly exhausted because Davis's claimed speedy trial violation was asserted on direct appeal solely in terms of state law; that is, Davis never asserted a violation of his *constitutional* right to a speedy trial. Apparently recognizing this shortcoming, Davis stated in his reply brief that, "[a]t this time, [he] concedes to the Attorney General's argument with respect to [his] CPL § 30.30 Speedy Trial Claim." Reply at I (Dkt. No. 27). The Court understands this statement to be an abandonment of the speedy trial claim. For the avoidance of doubt, however, and because of Davis's statement that he only concedes "at this time," the Court briefly notes that his speedy trial claim was not properly exhausted.

"Before seeking a federal writ of habeas corpus, a state prisoner must exhaust available state remedies, 28 U.S.C. § 2254(b)(1), thereby giving the State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights.'" *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)). Furthermore, "[t]o provide the

16

State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Id.* (citing *Duncan*, 513 U.S. at 365-66; *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)). "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.* at 32. But if a petitioner does not alert the state court to the presence of a federal claim, thereby leaving it to the state court to read beyond a petition or brief to identify the federal claim, he has not fairly presented the claim for purposes of satisfying § 2254's exhaustion requirement. *Id.*

Davis's brief on direct appeal of his conviction asserted only that "the trial court incorrectly denied Rodney Davis's motion to dismiss the indictment pursuant to criminal procedure law Section 30.30 where more than six months of time chargeable to the prosecution elapsed prior to trial." Lyons Decl. Ex. H at 40, 49, 102-110. The same was true of his application seeking leave to appeal to the Court of Appeals, which asserted only a violation of New York State's speedy trial statute, not a violation of Davis's constitutional right to a speedy trial. Lyons Decl. Ex. L at 207-221. Therefore, because Davis failed to alert the state courts that he was seeking relief on federal grounds, he has failed to exhaust this claim. *Accord Newborn v. Smith*, No. 00-CV-4844 (SJF), 2013 U.S. Dist. LEXIS 17492, at *3-5 (E.D.N.Y. Feb. 7, 2013) (finding claim for speedy trial violation unexhausted where "petitioner's brief focused exclusively on CPL § 30.30 and the amount of delay that the prosecution was chargeable with under that statute").

"[W]hen 'the petition failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." *Aparicio v. Artuz*, 269 F.3d 78, 90 (2d Cir. 2001) (quoting *Coleman*, 501 U.S. at 735 n.1). Petitioner has already had the one direct appeal and one leave application

to the Court of Appeals to which he is entitled. *Grey v. Hoke*, 933 F.2d 117, 120-21 (2d Cir. 1991). In addition, New York law would not allow Davis to raise his constitutional speedy trial violation on collateral attack due to his "unjustifiable failure . . . to raise such ground or issue upon an appeal actually perfected by him" if "sufficient facts appear on the record of the proceedings underlying the judgment to have permitted, upon appeal from such judgment, adequate review of the ground or issue raised upon the motion." CPL § 440.10(2)(c).

As noted above, this procedural default may be excused if Davis can demonstrate cause and prejudice or that failure to consider the claim will result in a fundamental miscarriage of justice. Davis did not address, much less demonstrate, cause for his default or actual prejudice.

Therefore, because Davis's speedy trial claim was not properly raised in his state-court proceedings and because he has not addressed any cause for his procedural default of these claims, his constitutional speedy trial claim is barred from habeas review. Finally, to the extent that Davis seeks review of the alleged speedy trial violations under state, rather than federal, law, such claim is not cognizable on a petition for habeas corpus relief. § 2254(a); *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'" (quoting *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990))).

## IV. CONCLUSION

For the foregoing reasons, Petitioner's § 2254 petition is DENIED. In addition, the Court declines to issue a certificate of appealability. Petitioner has not made a substantial showing of a denial of a federal right, and appellate review is therefore not warranted. *See Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005). The Clerk of Court shall dismiss this petition and close this case.

SO ORDERED.

Dated: March 25, 2015
New York, New York

_____
ALISON J. NATHAN
United States District Judge